UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:  Case No.: 23-17527-LMI
 Chapter 7

JORGE VILLAVICENCIO,

Debtor.
_____/

**VERIFIED MOTION TO ENFORCE DISCHARGE INJUNCTION AND FOR DAMAGES**

Debtor, JORGE VILLAVICENCIO, by and through undersigned counsel, hereby moves this Court for an Order finding Creditors Clayton Dale Mcilrath and Mythical Creatures Co. and each of its subsidiaries, including without limitation Unicorn (Mcilrath and Mystical Creatures collectively and individually, the "Mcilrath") for damages related to intentional violations of this Court's Order of Discharge and its resulting Discharge Injunction, pursuant to 11 U.S.C. § 524 and § 105, and in support, states as follows:

**PROCEDURAL BACKGROUND**

1. On September 20, 2023, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code [D.E. 1].

2. On Debtor's Schedule F, Creditors Clayton Dale Mcilrath, Mythical Creatures Co., Andrew Gisch and Rapid Finance are all included, and all appear on the Creditor Matrix and had timely notice of Debtor's instant bankruptcy case [D.E. 1].[1]

---

[1] It is undeniable, and likely undisputed, that Mcilrath had actual notice of Debtor's bankruptcy case, and that Mcilrath received a copy of this Court's Order of Discharge.

3.  As outlined in Debtor's Schedule A/B, the Debtor owns a 50% interest in Mythical Creatures Co., with the other 50% interest believed to be owned by creditor Mcilrath [D.E. 1, line 19].[2]

4.  Debtor's Schedule A/B also includes "[p]otential claims against Mythical Creatures LLC and Clayton Mcllrath (other 50% owner) [D.E. 1, line 33].

5.  On March 5, 2024 Trustee Robert Angueira filed a Motion to Approve Stipulation to Compromise Controversy based on an executed Stipulation whereby Creditor Mcilrath would pay the estate a total sum of $25,000 in exchange for "a global settlement of all issues in the case and any and all causes of action the estate may have against Mr. Mcilrath, Mythical Creatures, Co., Wizard Construction, LLC, and The Unicorn Store, LLC entities" (collectively referenced herein as "Mcilrath") (the "Motion to Approve Stipulation")[D.E. 50].

6.  The Motion to Approve Stipulation was heard on April 25, 2024. [D.E. 43]. Notably, as indicated in this Court's Order Granting the Motion to Approve Stipulation, "[t]he Trustee indicated during the Hearing that he will be filing a Notice of Abandonment covering all the Entities that the estate may have an interest in." [D.E. 56, par. 4]

7.  On March 11, 2024, this Court entered its Order of Discharge in the instant case [D.E. 51]. No exceptions or objections to discharge were filed or pursued by any party of interest under 11 U.S.C. § 523 or 11 U.S.C. § 727. Debtor also filed a Revocation of All Personal Guarantees Nunc Pro Tunc to the petition date [D.E. 40].

8.  As this Court may recall, in November 2023, Debtor was subjected to violations of the automatic stay by Creditor Rapid Finance, who sent a series of threatening text messages to the

---

[2] Debtor understands Mythical Creatures Co. to be a holding company that owns the membership interests in 1) Wizard Construction LLC (ID# 802812323) ("Wizard") and 2) The Unicorn Store, LLC (ID# 802728425) ("Unicorn"), both Michigan LLCs.

personal cell phones of Debtor and Debtor's non-filing spouse including copies of Debtor's driver's license depicting Debtor's home address where Debtor and his young family reside, accusing Debtor of fraud, and demanding a money settlement despite the pending bankruptcy to "keep the law from getting involved." After holding an expedited hearing, this Court entered an Order Granting Debtor's Expedited Verified Motion For Punitive Damages Related To Creditor Rapid Finance's Intimidation And Intentional Violation Of The Automatic Stay, And For Attorneys' Fees And Costs (the "Order Finding Intimidation and Intentional Violation of the Automatic Stay". [D.E. 29]

9. Unfortunately, the Debtor and his non-filing spouse are once again facing threatening actions, this time from Debtor's ex-partner Clay Mcilrath.[3]

## **WILLFUL AND EGREGIOUS VIOLATIONS OF DISCHARGE INJUNCTION**

10. On April 25, 2024, the same day that this Court heard the Trustee's Motion to Approve Settlement, where the Trustee indicated his intent to abandon the estate's interest in Mythical Creatures, Co., Wizard Construction, LLC, and The Unicorn Store, LLC, Debtor and his non-filing spouse began receiving threatening texts and emails from Mcilrath, claiming that there were "loose ends" the Debtor needed to clean up with Mcilrath as related to Mythical Creatures.[4]

11. Mcilrath's April 25, 2024 email to Debtor and Debtor's non-filing spouse opens with "**Hey Kathy/Jorge**" and states, in part, that:

---

[3] Because the most concerning emails have come from Debtor's ex-partner Clay Mcilrath, the instant motion is directed at Mcilrath and Mythical Creatures; however, Debtor reserves all rights as to Rapid Finance and Andrew Gish.

[4] The Debtor reasonably interprets the inclusion of his non-filing spouse on all communications as a bad-faith effort to intimidate, harass and humiliate the Debtor. Debtor's non-filing spouse was never a member, officer or board member (or otherwise engaged in the operations) of Mythical Creatures, Co., Wizard Construction, LLC, and The Unicorn Store, LLC. Moreover, Debtor's undersigned counsel was never contacted by any of Mcilrath regarding any alleged "loose ends", nor did any of Mcilrath include undersigned counsel on any of the emails to Debtor referenced herein.

a. "…I still need to settle with Gisch and Rapid because without a direct settlement, **they will pursue litigation against the business, which bankruptcy will not shield you from**." [5]

b. "In full transparency, **I've BCC'd interested parties** so they can see my intent to act in good faith. [6]

c. "Jorge, I'll follow up tomorrow with a forfeiture and dissolution agreement. I hate to say it, because I don't want it misinterpreted as a threat: but **I'm trying to shield you from a lawsuit or tax consequences. Ignoring contact with me just takes it out of my hands and means we'll be in court addressing lawsuits**." [2,3]

*Emphasis added.*

12. On May 1, 2024, in response to the Debtor informing Mcilrath that Debtor had already received his bankruptcy discharge, simply wanted to move on with his life and that he interpreted Mcilrath's communications as "harassing communications which I currently believe to be in bad faith and purely with the intent to intimidate and harass me." Mcilrath responded with the following clarifications:

a. "It [your bankruptcy discharge] does not absolve you of **damages in a civil suit, which I am trying to mitigate**."

b. "Since you are not willing to go through the steps to either a) relinquish control, b) dissolve the business, or c) fulfill legal duties; then **I will need to seek adjudication from**

---

[5] As stated earlier, Gisch, Rapid Finance and Mythical Creatures Co. (dba Unicorn), were all scheduled creditors in Debtor's initial bankruptcy filings, and thus subject to this Court's Discharge Order.
[6] Contrary to Mcilrath's claim of full transparency and good faith, Mcilrath notably states that he has blind copied others, which Debtor reasonably interpreted as a bad faith tactic to intimidate and coerce the Debtor to repay Mcilrath (and potentially others) through the signing document forfeiting Debtor's expected-to-be-revested membership interest in Mythical Creatures to Mcilrath.

On May 1, 2024, Debtor and Debtor's non-filing spouse received an email from Gisch stating that: "I was bcc'd on clays last email to you and wanted to follow up to bookend all of this so we can move on…Now that the hearing is over, I would really appreciate it on a personal level if you could **finish the final steps as to avoid litigation**." *Emphasis added.*

> **the courts** to forcefully remove you from the business **on the grounds of fraud, negligence, and failure to comply with fiduciary duties**." [7]

c. "Here's the short version of what may happen, which can be considered hypothetical and heresy [sic] for now, **none of which a bankruptcy shields from**:

- **Damages sought by Rapid Finance** for failing to disclose me as a partner and failure to disclose or adhere to business bylaws; fraudulently borrowing.

- **Damages sought by me [Mcilrath]** to cover the legal costs that I will incur in seeking adjudication for forceful removal on the grounds of abandonment, failure to comply, and breach of contract.

- **Damages sought by Andrew Gisch** for breach of contract."

d. "I truly don't actually give a [bleep] [8] **if these lawsuits move forward, the costs of which will fall on you**. I know my role, innocence, and **already have indemnity**. So if you want the dominos to fall, you make the bed and lie in it as you see fit, and good luck."

e. This will be my last communication unless you change your mind after consideration and hopefully seeking counsel. **If I don't hear anything by Friday to signal your intention to act in good faith, I'll just see you in court**."

*Emphasis added*.  The emails are attached hereto as **composite Exhibit 1.**

13.  Accordingly, Mcilrath is acting to personally recover the Debtor's rights and membership interest(s) in Mythical Creatures as consideration to setoff pre-petition debts owed to Mcilrath, Gisch, Rapid Finance and Mythical Creatures – debts that were all subject to this Court's Order of Discharge.  And if Debtor refuses Mcilrath's demands for recovery of such property, the

---

[7] The Debtor's bankruptcy Schedule F included both Mcilrath and Mythical Creatures as creditors based on "Potential business liability related to Debtor's principal relationship with Mythical Creatures Co. and each of its subsidiaries."
[8] Inappropriate language for the Court removed.

collection actions of Mcilrath, Rapid Finance and Gisch will continue in earnest (in addition to Mcilrath's continued pursuit of Debtor's rights and interests in Mythical Creatures). [3]

14. Mcilrath is further pressuring Debtor to transfer his interests in Mythical Creatures to Mcilrath (as a setoff to the enforcement of process on otherwise discharged debts) by stating that he has "indemnity" (presumably against Debtor), thus revealing Mcilrath intent to recover from Debtor any "damages" sought by Rapid Finance (a discharged creditor) and Andrew Gisch (a discharged creditor). [9]

15. Also, by pressuring Rapid Finance and Gisch to wrongfully commence litigation against the Debtor, Mcilrath seeks to offset his own joint-liability to Rapid Finance and Gisch.

16. The Debtor interprets Mcilrath' demands for recovery of Debtor's rights and interests in Mythical Creatures, and threats of litigation and indemnification if Debtor does not promptly agree to such offset against the collective discharged claims, as a bad faith tactic to create fear and duress on the Debtor, and in direct violation of both the "fresh start" intent of the Bankruptcy Code and this Court's Order of Discharge.

17. It was always the Debtor's good-faith understanding that the Trustee and the Chapter 7 estate were administering the Debtor's interest in Mythical Creatures, and that if additional actions were required by the Debtor, such actions would be properly administered through appropriate filings in Debtor's bankruptcy case. While the Trustee and Mcilrath entered into a Court-approved Stipulation regarding the estate's claims against Mcilrath and Mythical Creatures, this Court's order

---

[9] The purpose of indemnification is the "reimbursement, restitution, or compensation... for loss, damage, or liability in tort"; that is, indemnity ensures that payment rests with "the party who is primarily liable for reimbursement of expenditures paid to a third party for injuries resulting from a violation of a common-law duty" by that primary party. *Old Republic Nat'l Ins. Co. v. Panella*, 319 Ga. App. 274, 276, 734 S.E.2d 523, 526 (2012) (footnotes omitted) (*first quoting Travelers Ins. Co.* v. *Ga. Power Co.*, 51 Ga. App. 579, 181 S.E. 111, 114 (1935); *then quoting Indemnity*, Black's Law Dictionary (7th ed. 1999)).

approving said Stipulation included no requirements from Debtor [D.E. 56] (the "Order Approving Stipulation"). [10]

18. Mcilrath did not seek to compel any action from the Debtor, or any other relief regarding the Debtor in connection with the Stipulation or Motion to Approve such Stipulation. In fact, it wasn't until May 3, 2024, when the Order Approving Stipulation was entered, that Debtor learned of the Trustee's intent to file a Notice of Abandonment as related to the estate's interest in Mythical Creatures (thereby seemingly reverting such interests back to the Debtor pursuant to 11 U.S.C. § 554).

19. Mcilrath's actions are willful because 1) Mcilrath received notice of Debtor's bankruptcy filing; 2) has evidenced actual knowledge of the bankruptcy and this Court's Order of Discharge through text messages and emails; 3) has continued to make demands to recover the Debtor's rights and interests as an offset to otherwise discharged claims, and 4) has taken such actions without any communications to Debtor's undersigned bankruptcy counsel or this Court.

20. Accordingly, Debtor requests reasonable attorneys' fees incurred in the filing of this Motion and for punitive damages against all Creditors for their blatant violations of Discharge Order and to deter Creditors from such actions in the future.

## MEMORANDUM OF LAW

21. The Bankruptcy Code is designed to give debtors a fresh start and to obtain this "fresh start" the permanent injunction found in § 524 must be upheld. *In re McLean*, 794 F.3d 1313, 1322 (11th Cir. 2015). Violations of this provision cannot be treated lightly or else the "fresh start" of the debtor will never come about. *In re Kiker,* 98 B.R. 103 (Bankr. N.D.Ga.1988) "The discharge and

---

[10] Such Order was just recently entered on May 3, 2024.

the injunction of discharge are the key elements of a debtor's fresh start. *Id*. at 109.Violations of the injunction of discharge are considered serious matters and must be redressed." *Id*.

22. Section 524 provides:

   a. "A discharge in a case under this title…
      (2) operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor…"

11 U.S.C. § 524(a)(2).

23. Section 105(a) provides:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105.

24. Section 105 grants statutory contempt powers in the bankruptcy context, stating, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996) (*citing* 11 U.S.C. § 105(a)). "Section 105 creates a statutory contempt power, distinct from the court's inherent contempt powers in bankruptcy proceedings." *Hardy,* at 1389 (*citing Jove Eng'g, Inc. v. Internal Revenue Serv*., 92 F.3d 1539, 1553 (11th Cir.1996)). "The language of § 105 encompasses "any type of order, whether injunctive, compensative or punitive, as long as it is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Id.* Therefore, "§ 105(a) grants courts independent statutory powers to award monetary and other forms of relief for [discharge injunction] violations to the extent such awards are `necessary and appropriate' to carry out the provisions of the Bankruptcy Code." *Id*.

at 1389-90. "The plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or *punitive,* as long as it is `necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Matter of Arnold,* 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997) (emphasis in original).

25. A defendant may be liable for contempt under § 105 if it willfully violated the permanent injunction of §524. *Hardy* at 1389-90 (*citing Jove Eng'g,* 92 F.3d at 1553-54). The Eleventh Circuit has stated that the "focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Co. v. Khimani,* 892 F.2d 1512, 1516 (11th Cir.1990). "Under the court's statutory contempt powers a court may award sanctions for contempt by finding that the creditor acted willfully according to the following test under which the movant must prove the creditor knew (1) that the discharge injunction was invoked and (2) intended the actions which violated the injunction." *Matter of Arnold,* 206 B.R. at 568 (*citing In re Hardy,* 97 F.3d 1384, 1390 (11th Cir. 1996)). "The burden of proof is on the movant to prove the willfulness of the violation by clear and convincing evidence." *Arnold* at 568 (*citing Jove Eng'g, Inc.,* 92 F.3d at 1545 (11th Cir.1996) (providing that "[a] finding of civil contempt must be based on `clear and convincing evidence' that a court order was violated")).

WHEREFORE, Debtor, JORGE VILLAVICENCIO, respectfully requests that this Honorable Court enter an Order finding Creditors in violation of this Court's Order of Discharge and its resulting Discharge Injunction, and awarding damages in favor of Debtor that would at the very least deter Creditors from such inappropriate behavior in the future, and for reasonable attorneys' fees and costs, and any other relief this Court deems just and proper under the circumstances.

| | |
|---|---|
| **VERIFICATION BY DEBTOR**<br><br>I, Jorge Villavicencio, declare under penalty of perjury that the above facts are true and correct.<br><br>Executed on 6<sup>+h</sup> day of May, 2024.<br><br>_____<br>JORGE VILLAVICENCIO | Respectfully submitted,<br><br>FLORIDA BANKRUPTCY ADVISORS, P.L.<br>/s/ Christian Panagakos<br>Christian Panagakos<br>Florida Bar No.: 065579<br>Attorney for Debtor<br>120 E. Oakland Park Blvd., Suite 105<br>Ft. Lauderdale, FL 33334<br>Phone: (954) 600-8990<br>Email: CP@FloridaBankruptcyAdvisors.com |